Henry PAREDES FIGUEROA, Plaintiff,

v.

**INTERNATIONAL AIR SERVICES OF PUERTO RICO, INC., Defendant.**

Civ. No. 84–0415(RLA).

United States District Court,
D. Puerto Rico.

May 28, 1987.

Francisco López Romo, San Juan, P.R., for plaintiff.

Luis D. Ortíz Abreu, Goldman & Antonetti, Santurce, P.R., for defendant.

## OPINION AND ORDER

ACOSTA, District Judge.

The present case is an age discrimination suit filed by Henry Paredes Figueroa pursuant to 29 U.S.C. § 621 *et seq.* that was settled by the parties and dismissed by the Court in March 1986. However, plaintiff, generally dissatisfied with the settlement, appealed from the consent judgment. The First Circuit Court of Appeals, in December 1986, held that the settlement agreement was binding but that the final written agreement did not accurately reflect the parties' intentions. Accordingly, the First Circuit vacated the judgment and remanded the case with instructions that we consider whether or not two specific paragraphs of the written settlement stipulation conformed with the parties' settlement negotiations. In a companion Opinion and Order which is based on a hearing held on March 6, 1987 we have disposed of that issue. Since none of the motions filed by the parties on remand and presently considered herein affect that disposition we will once again enter judgment dismissing the present case.

The purpose of this Opinion and Order is to resolve several motions that the parties presented to the Court at the March 6th hearing. Although that hearing was called for the sole purpose of modifying the settlement agreement as per instructions from

the First Circuit, the parties nonetheless filed motions dealing with a tendered amended complaint and the payment of attorney's fees from the settlement fund.

## AMENDED COMPLAINT

At the March 6th hearing, plaintiff surprised defendants and the Court by filing a motion requesting leave to amend the complaint to include as an additional plaintiff his conjugal partnership with his wife, Carmen Despradel de Paredes. Plaintiff's alleged purpose in making this belated motion is to "exert /the conjugal partnership's right to place its own claim resulting from the facts that give rise to the cause of action in the present case". Thus, plaintiff attempts to ride the coattails of our jurisdiction over his original Age Discrimination in Employment Act (ADEA) claim, *see* 29 U.S.C. § 621 *et seq.*, with a new, albeit identical, claim which asserts that the conjugal partnership's cause of action "arises from identical facts to the ones that give rise to the cause of action in the original claim in this case."

■ Plaintiff's argument in a nutshell is that Puerto Rico law endows a conjugal partnership with a separate legal identity from that of its administrators, i.e., Mr. Paredes and Ms. Despradel de Paredes, and that in the present case the conjugal partnership having a legal interest in the case since plaintiff's wages and money awards substituting wages are considered the joint property of the partnership, *see* Article 1301 P.R. Civil Code, 31 L.P.R.A. 3641, never had its day in Court. Accordingly, says plaintiff, the conjugal partnership is now, three years later, entitled to amend the complaint to assert its claim. The tendered amended complaint thus asks for the job reinstatement of Mr. Paredes as well as related damages—the very remedies requested in the original complaint and settled by the parties for $45,000.00.

On its face, plaintiff's motion seems nothing more than a brazen attempt to gain remedies that he contracted away when he settled the case. His obvious dissatisfaction with the settlement agreement does not give him any legal right to undermine a contract to which he knowingly and willingly bound himself. The First Circuit has upheld the settlement agreement particularly as to its binding effect on plaintiff and a simple change of legal identities cannot loosen its lasting hold on him. This is to say that just because plaintiff changes representational hats from individual plaintiff/discriminatee to plaintiff/coadministrator of conjugal partnership he does not also change the nature of the case nor the finality of the judgment of dismissal entered upon the stipulation of the parties. To hold otherwise would not only undermine the very purpose of settlement structures in the first place, i.e., the alternative yet final resolution of disputes without trial, but it would lead to ludicrous and unfair results. For example, if in the present case we were to agree with plaintiff's argument and let him amend the complaint so that he, as legal co-representative of the conjugal partnership, can essentially reassert the same claims he effectively sold to defendants when he settled the case we would reach the following absurd result. Mr. Paredes would retain the $45,000.00 for settling the same claims he would then prosecute as legal representative of the conjugal partnership. Since the cause of action and remedies are the same, should the conjugal partnership win at trial Mr. Paredes would receive damages and reinstatement plus the $45,000.00 he personally accepted for not pursuing exactly what he would be getting as the winning party *qua* legal representative of the conjugal partnership.

Mr. Paredes would effectively be getting two bites of the apple and so would the conjugal partnership because the settlement amount, the back wages award, and the wages earned from reinstatement in the job would all be the joint property of the partnership between Mr. Paredes and Ms. Carmen Despradel de Paredes. We cannot countenance such an unfair result. We find plaintiff's attempt to amend the complaint logically, practically and legally unavailing.

Plaintiff, in his motion [1], does not specify what procedural right he has to amend the complaint at this late stage of the litigation and instead makes amorphous statements about how the ADEA, particularly 29 U.S.C. §§ 626(c)(1) and 626(b), permits "any person aggrieved" to sue under the ADEA and the Courts to fashion legal and equitable remedies "suited to facts (sic) of case at hand which will best effectuate the purposes of the Act and do justice to the parties."

Certainly, at this stage of the proceedings, plaintiff, under Fed.R.Civ.P. 15(a), can only amend the complaint by leave of the Court; and leave can be given only when justice so requires. Here, the amendment is proferred for the sole reason of joining another plaintiff. Fed.R.Civ.P. 19 states that joinder of persons shall be made only if they are, as described in the subdivisions of the Rule, indispensable for the just adjudication of the cause. Additionally, Fed.R.Civ.P. 21 states that parties may be added or dropped at any stage of the litigation and on such terms as are just. The common thread to these three rules is that justice must require the amendment of a pleading and that joinder is a matter left to the sound discretion of the Court. *See generally* 26 Federal Procedure, L.Ed., Parties §§ 59:176, *et seq.* The Court has found no cases, nor has plaintiff proferred any, where the joinder of a *plaintiff* after a cause has been settled and dismissed (where the Court approval of the settlement has been affirmed in result but not form by an appellate court) has been permitted. There are a few cases where the joinder of a *defendant* has been permitted after judgment has been entered but only because it was needed to afford *plaintiff* full relief. *U.S. v. Bayer Co.,* 105 F.Supp. 955 (D.C.N.Y.1955). Nonetheless, even the proposed joinder of defendants has been refused in cases where the motion to join was untimely or where prejudice would re-

sult. *See, e.g., Cabrera v. Bayamón,* 622 F.2d 4 (1st Cir.1980).

In the present case, not only is plaintiff's motion to join his conjugal partnership as a plaintiff very untimely and of dubious merit, but it would obviously prejudice defendant by protracting its expenses in defending a suit it thought settled over two years ago. These factors alone suffice to deny plaintiff's motion to amend. Nonetheless, we will analyze plaintiff's allegation that the conjugal partnership has a separate claim from that of Mr. Paredes under the ADEA.

■ Although we agree with plaintiff that under Puerto Rico law a conjugal partnership is a distinct legal entity with a capacity to sue and be sued, we are hard-pressed to extend that description to define Mr. Paredes and Mrs. Despradel de Paredes' conjugal partnership as an "employee" under the ADEA since no employer-employee relationship existed between defendant and the conjugal partnership.

The conjugal partnership has no independent standing to sue in the present case. Under Puerto Rico law there is no need to include a conjugal partnership as a party plaintiff, as opposed to a party defendant, since whatever joint benefits are gained through the suit would automatically accrue to the partnership. Puerto Rico law expresly binds one spouse to the unilateral administration act of the other regarding community property and it also implicitly binds the conjugal partnership when neither administrator acts in a timely fashion to assert any claims on behalf of the partnership. *See* Article 93 of the Civil Code, 31 L.P.R.A. 286.

The purpose of including the conjugal partnership as plaintiff in this case is not to vindicate plaintiff's own rights under the ADEA since plaintiff himself fully advocated those rights on his own behalf insofar as he knowingly and willfully settled the case.

---

1. Plaintiff in fact, filed two motions tendering two versions of the amended complaint. The second version simply revises the named defendants to include only International Air Services of Puerto Rico, Inc., since judgment was entered dismissing the other original defendants for plaintiff's failure to follow the ADEA's jurisdictional prerequisites as to them. For this reason, we will only make mention of the second (amended) motion requesting leave to file an amended complaint.

Thus, the only purpose of including the partnership as to the damages claim would be to ensure that the final judgment is properly divided under Puerto Rico law between damages for mental and physical suffering, which belong to Mr. Paredes personally, and damages for loss of income which belong to the conjugal partnership. *See Robles Ostolaza v. U.P.R.*, 96 P.R.R. 570 (1968); Article 1301 of the Civil Code, 31 L.P.R.A. 3641. That is not necessary here, since Article 93 of the Civil Code, 31 L.P.R.A. 286, provides that "either of the spouses may legally represent the conjugal community. Any unilateral administration act of one of the spouses shall bind the community property and shall be presumed valid to all legal effects." Here, one administrator, namely Mr. Paredes, bound his spouse and the conjugal partnership when he unilaterally settled a legal cause which involved community property. For Ms. Carmen Despradel de Paredes and the conjugal partnership the fact that the conjugal partnership lacks standing to sue in the present case or was inadvertently not named a plaintiff on the original complaint is of no legal significance. The reason is that under Article 1301 of the Civil Code 31 L.P.R.A. § 3641, the settlement monies, and if the case had gone to trial—the back pay award, *automatically* becomes community property. *See Franco v. Mayaguez Building, Inc.*, 108 D.P.R. 192, 195 (1978) (per curiam).

In the present case, not only did Mr. Paredes unilaterally bind the conjugal partnership, but in addition, the conjugal partnership itself is precluded from asserting any claim here because of its extreme and unjustified tardiness.

## ATTORNEY'S FEES

At the March 16, 1987 hearing, attorney Purcell-Ruiz filed a motion regarding the payment of attorney's fees for himself and for the deceased George Weasler, Esq. both of whom represented plaintiff in this case up to the time when the settlement agreement came to issue and with whom they had a contingency fee agreement.

Although the contingency agreement was oral, the written settlement agreement between the main litigants contained two provisions that indicated its existence and enforceability.

Paragraph 4(A) of the settlement agreement reads as follows:

(A) THE CORPORATIONS agree to pay PLAINTIFF, upon execution of this agreement, the sum of FORTY FIVE THOUSAND DOLLARS ($45,000.) in a *check made payable to PLAINTIFF, HENRY PAREDES FIGUEROA, and his attorney, Pedro E. Purcell Ruiz, Esq.* as a full and complete settlement of all claims PLAINTIFF has or may have against THE CORPORATIONS with respect to his employment. *Such amount includes any and all attorney's fees.* (Emphasis added.)

Paragraph 8 of the settlement agreement states:

The release constitutes the complete understanding between plaintiff, his attorney Pedro E. Purcell Ruiz, Esq. and THE CORPORATIONS.

According to Purcell Ruiz, the above wording of the settlement agreement reflects a companion agreement between himself, plaintiff, and attorney Weasler that the fees were on a contingency basis and would be one-third of any amount obtained. Purcell Ruiz further states that he and Weasler were to share the attorney's fees on a 50–50% basis. Thus, given that this case was settled for $45,000.00, one-third or 15,000 should be earmarked as attorney's fees and Purcell Ruiz should receive half or $7,500.00 and the Estate of attorney Weasler the other half.

Plaintiff, at the March 16 hearing, conceded that the contingency fee agreement and the other spin off agreements existed but argued that the final amount of attorney's fees should be reduced by the litigation expenses incurred by plaintiff. Attorney Purcell Ruiz agreed and a deadline was set for plaintiff's new lawyer, attorney López Romo, to file a statement of expenses.

On March 27, 1987 attorney López Romo filed a statement of expenses which includ-

ed $500.00 plaintiff paid attorneys Purcell Ruiz and Weasler in October 1983 and $10,179.00 which plaintiff was claiming as expenses and attorney's fees for the appellate and post-appellate work conducted by attorney López Romo.

Mr. Purcell Ruiz filed an opposition to plaintiff's attempt to include as deductible expenses the amounts paid or to be paid to attorneys López Romo and Tellechea as having no legal basis.

On May 4, 1987, plaintiff filed a response to the above mentioned opposition in which he states: "we are inclined to agree with attorney Purcell that /there is/ no jurisprudence directly supporting plaintiff's claim for deduction from the total settlement amount as expenses of (sic) the cost of legal counsel by attorneys Tellechea and López Romo."

■ Despite this concession by plaintiff's attorney that he did not, in essence, make a reasonably inquiry of law when he filed his original statement of expenses, thereby violating Fed.R.Civ.P. 11, he nonetheless proceeds to argue for the first time that the Court should set aside the contingency agreement between plaintiff and attorneys Purcell and Weasler as not being based on the reasonable value of the services they provided plaintiff.

We refuse to entertain such an untimely argument which directly contradicts not only the written settlement agreement, but, more important, plaintiff's statements at the March 6 hearing wherein he acknowledged the existence of the contingency agreement and raised only the issue of expenses. Now that he has no foundation for deducting more than $10,000.00 in expenses he has incurred since the settlement of this case, he seeks to undermine the contingency agreement with his original attorneys even though he has never previously alleged any impropriety on their part.

Plaintiff's arguments are late, specious and prejudicial to his original attorneys. His prayer to set aside the contingency agreement is denied. Attorney Purcell Ruiz's motion to receive attorney's fees from the settlement fund is GRANTED insofar as the escrow agents will be or-

dered to issue two checks in the amounts of $7,250.00 to Purcell Ruiz and Weasler respectively; these amounts reflecting a deduction of $500.00 as expenses paid by plaintiff.

## CONCLUSION

In accordance with the above, the Court hereby rules as follows:

1. Plaintiff's amended motion for leave to file an amended complaint filed on April 23, 1987 is DENIED;

2. Attorney Pedro Purcell Ruiz's motion requesting order for payment of attorney's fees is GRANTED insofar as attorneys Purcell Ruiz and Weasler will receive $7,250.00 each in attorney's fees; and

3. Mr. Roberto Montalvo and Mr. Raúl López, the escrow agents of the settlement fund, are hereby ORDERED to disburse the settlement amount in the following manner.

(i) one check in the amount of $7,250.00 is to be issued to Mr. Purcell Ruiz;

(ii) one check in the amount of $7,250.00 is to be issued to the Estate of Mr. George Weasler; and

(iii) one check is to be issued to Mr. Paredes in the amount of $30,500.00 plus any interest accrued on the entire account up to the date of issuance designated below.

(iv) The escrow agents are not to disburse these amounts before June 30, 1987.

4. The respective parties wishing to receive their entitled disbursement of the settlement amount are hereby ordered to serve a certified copy of this Order upon the escrow agents designated above.

5. Finally, the Court hereby admonishes attorney López Romo for his violation of Fed.R.Civ.P. 11. This admonishment corresponds not only to his failure to make a reasonable inquiry before filing his statement of expenses and request for a deduction of the same from the settlement amount, but also for committing a similar error when he filed his first motion to amend the complaint wherein he included party defendants that had been dismissed

on procedural grounds on July 12, 1985; a fact very easily ascertainable. We do not, however, wish to impose Rule 11 sanctions on Mr. López Romo personally hopeful that a simple warning will suffice.

IT IS SO ORDERED.